**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 22 1999**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

vs.

CARL LANEILL BROWN,

      Defendant - Appellant.

No. 98-3343

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

vs.

LENARD CHAUNCY DIXON,

      Defendant - Appellant.

No. 98-3347

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. Nos. 98-40034-01 and 98-CR-40034-02)**

---

No. 98-3343 was submitted on the briefs:[*]

James P. Moran, Assistant Federal Public Defender and Michael G. Katz, Federal

---

[*] After examining the briefs and appellate record in No. 98-3343, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1 (G). The cause therefore is ordered submitted without oral argument.

Public Defender, Denver, Colorado, for the Defendant-Appellant Brown.

Gregory G. Hough, Assistant United States Attorney (Jackie N. Williams, United States Attorney, with him on the briefs), Topeka, Kansas, for the Plaintiff-Appellee.

Timothy J. Henry, Assistant Federal Public Defender (David J. Phillips, Federal Public Defender, with him on the briefs), Wichita, Kansas, for the Defendant-Appellant Dixon.

---

Before **KELLY**, **McWILLIAMS**, and **HENRY**, Circuit Judges.

---

**KELLY**, Circuit Judge.

---

Defendant-Appellant Carl Laneill Brown and Defendant-Appellant Lenard Chauncy Dixon appeal from their convictions arising from an incident where the nineteen-year-old male victim was robbed and his car was taken. Mr. Brown and Mr. Dixon were convicted of conspiracy to commit a carjacking, 18 U.S.C. §§ 2, 371, 2119 (count 1); carjacking, 18 U.S.C. §§ 2, 2119 (count 2); and use of a firearm during and in relation to a crime of violence, 18 U.S.C. §§ 2, 924(c)(1) (count 3). Mr. Brown also was convicted of carrying a firearm during and in relation to a crime of violence, 18 U.S.C. §§ 2, 924(c)(1) (count 4), and possession of a firearm by a felon, 18 U.S.C. §§ 922(g), 924(a)(2) (count 5). Mr. Brown and Mr. Dixon were sentenced to imprisonment of 410 and 123 months respectively. They also were sentenced to three years supervised release, and ordered to pay restitution of $4,948.

On appeal, Mr. Brown argues that (1) his conduct does not constitute a violation of the carjacking statute, a sufficiency of the evidence challenge; and (2) his conviction on count 4 should be vacated because conspiracy under § 371 is not a crime of violence as defined by § 924(c)(3). Mr. Dixon challenges (3) the victim's in-court identification of him as unreliable and violative of due process; (4) the government's use of gang affiliation evidence as violative of Fed. R. Evid. 404(b); (5) the sufficiency of the evidence, contending that his conduct does not constitute a violation of the carjacking statute; (6) the carjacking statute as lacking a substantial interstate nexus as required by the Commerce Clause; (7) the district court's denial of his motion to dismiss count 3 as violative of double jeopardy; (8) the government's promises to cooperating witnesses as contrary to the federal anti-gratuity statute; and (9) the district court's application of the Sentencing Guidelines, specifically enhancement for bodily injury under USSG § 2B3.1(b)(3)(A). The court granted Mr. Brown's motion to join Mr. Dixon's brief. Our jurisdiction arises under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and we affirm.

Background

Mr. Dixon, Mr. Brown and two friends, Kyree McClelland and Alfred Reed, borrowed a 1992 white Chrysler New Yorker and traveled from Topeka,

Kansas to Lawrence, Kansas to drop Mr. Reed off at a nightclub. Mr. Brown had two guns with him, a .357 and .38, and supplied the latter to Mr. McClelland. See 10 R. 366. Before arriving in Lawrence, Mr. Brown, Mr. Dixon and Mr. McClelland (the trio) discussed robbing someone. See 10 R. 369. After dropping Mr. Reed off, the trio observed the victim approaching his 1997 black Ford Explorer in the parking lot. See id. at 371-72. The trio waved to the victim and the victim waved back. See 8 R. 44-46; 9 R. 158-62. According to Mr. McClelland, [1] Mr. Brown said that the victim "looked like a good person to get." 10 R. 372. Mr. McClelland understood this to mean robbery, including getting the victim's Explorer. See id.

As the victim and his passengers drove out of the nightclub parking lot shortly after midnight, the trio followed them to a residence. Because the residence driveway was full, the victim pulled his vehicle into an adjacent driveway. The victim got out of his vehicle and said goodbye to his passengers. The victim left the motor running and his headlights on. 10 R. 385.

When the victim returned, the trio's vehicle was parked directly behind him. Mr. Dixon, the driver of the trio's vehicle, summoned the victim, and a brief conversation ensued. Mr. Brown, a passenger, opened the glove box of the trio's

---

[1] Mr. McClelland is an unindicted co-conspirator who pled guilty to a state charge of robbery and testified against the Defendants.

vehicle and supplied the victim with a pen and paper to write down a telephone number. The victim testified that he was responsive to Mr. Dixon's inquiries so he could be on his way. Before the victim could get into his vehicle, however, Mr. Brown alighted from the trio's vehicle, cut him off, pointed a gun at him and demanded his money and wallet. The victim complied, and Mr. Brown then demanded his jewelry. Mr. McClelland testified on direct examination that Mr. Dixon then told Mr. McClelland to get into the victim's vehicle, 10 R. 383, (although on cross examination, Mr. McClelland admitted to a previous statement that it was Mr. Brown that told him to get into the vehicle, 11 R. 649). As the victim removed his jewelry, Mr. Dixon began hitting him on the right side of his face. According to the victim, Mr. Brown told Mr. Dixon to "chill out" and "take it easy, he's doing it." 8 R. 57.

Mr. Brown, with his gun pointed at the victim, ordered the victim to run down the street. The victim refused, testifying that he was certain he would be shot in the back. 8 R. 58-59. The victim was hit several more times. Then, one of the victim's passengers who had been dropped off at the residence apparently heard the commotion and yelled "What's going on?" 8 R. 59. This apparently distracted Mr. Brown and Mr. Dixon and allowed the victim time to run inside the residence and escape. Mr. McClelland drove the victim's vehicle away, following the trio's vehicle. Police quickly apprehended the trio.

Discussion

1 & 5.        <u>Sufficiency of the Evidence to Constitute Carjacking</u>

The Defendants assert that there was insufficient evidence to convict them of carjacking in violation of 18 U.S.C. § 2119. The statute states:

> Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall–
> (1)  be fined under this title or imprisoned . . .

Defendants claim that (1) since the victim already was inside the house when they drove off, his car was not taken from his "person or presence;" (2) force was not used during the taking of the vehicle but only during the robbery; and (3) the intent to cause death or serious bodily harm was not tied to the act of taking the vehicle.

Although we review a challenge to the sufficiency of the evidence de novo, we do so while viewing "the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government." <u>United States v. Haslip</u>, 160 F.3d 649, 653 (10th Cir. 1998), <u>cert. denied</u>, 119 S. Ct. 1346 (1999). We will reverse "'only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" <u>Id</u>. at 652 (citation omitted).

a.        Presence

- 6 -

A car is stolen from the "presence" of an individual if "the victim [is] sufficiently near to the vehicle for it to be within reach, inspection, or control and, absent threat or intimidation, to be able to maintain control of it." United States v. Kimble, 178 F.3d 1163, 1168 (11th Cir. 1999), petitions for cert. filed, Nos. 99-6293, 99-6309 (Sept. 20, 1999). Having left the motor running and the lights on, the victim stepped away from his vehicle only briefly before he was accosted. The vehicle was plainly within his reach, inspection and control. Absent the threats and intimidation of Mr. Brown and Mr. Dixon, the victim would have returned to his vehicle and driven away. Indeed, once the victim fled, Mr. McClelland merely put the car in gear and drove it away. 10 R. 385. That the victim was in the residence, having fled to protect his life, when the vehicle was actually driven away by Mr. McClelland is of no moment. Regardless, we follow the Third and Eleventh Circuits in holding that the presence requirement of 18 U.S.C. § 2119 does not require "that the property be within easy touch" so long as "the car was close enough for the victim[] to have prevented its taking had fear of violence not caused [him] to hesitate." Kimble, 178 F.3d at 1167, 1168; United States v. Lake, 150 F.3d 269, 272 (3d Cir. 1998), cert. denied, 119 S. Ct. 839 (1999).

    b.    Force and Violence or Intimidation

Ample evidence exists that Mr. Brown and Mr. Dixon used force, violence

and intimidation to take the victim's vehicle. Mr. Brown robbed him at gunpoint; Mr. Dixon hit him while he was complying with the demand for jewelry. The victim was hit again when he refused to run down the street. The victim escaped into a residence only when one of his friends called out to him, at which point Defendants drove off with the vehicle. To attempt to separate the violence used in the robbery from the taking of the vehicle is disingenuous. Had Defendants killed the victim during the course of the robbery and then stolen his vehicle, they could not argue that the violence attached solely to the first act of robbery because of the victim's demise. A strong nexus exists between the use of force and the taking of the vehicle–the victim was prevented from returning to his vehicle due to force, violence and intimidation; his subsequent flight into the residence merely allowed Defendants to complete the plan.

    c.    Intent

The Supreme Court recently addressed the necessary intent for a carjacking conviction under § 2119.

> The carjacking statute essentially is aimed at providing a federal penalty for a particular type of robbery. The statute's mens rea component thus modifies the act of "tak[ing]" the motor vehicle. It directs the factfinder's attention to the defendant's state of mind at the precise moment he demanded or took control over the car "by force and violence or by intimidation." If the defendant has the proscribed state of mind at that moment, the statute's scienter element is satisfied.

Holloway v. United States, 119 S.Ct. 966, 970 (1999). Mr. McClelland testified that part of the robbery plan was to take the victim's car, see 10 R. 372, and, indeed, Mr. Dixon told Mr. McClelland to drive it away after Mr. Dixon struck the victim. See id. at 385. This in itself is sufficient evidence of Defendants' state of mind for a rational jury to find intent.

2.      Conspiracy to Commit Carjacking as a Crime of Violence

Mr. Brown contends that conspiracy under § 371 is not a crime of violence as defined by § 924(c)(3), and therefore he could not be convicted of carrying a firearm during and in relation to a crime of violence, § 924(c)(1). Our review of this statutory interpretation question is de novo. See United States v. King, 979 F.2d 801, 802 (10th Cir. 1992). A crime of violence is

> an offense that is a felony and–
> **(A)** has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> **(B)** that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). Of course, Mr. Brown was charged with conspiracy to commit carjacking.

The substantive offense of carjacking is always a crime of violence because § 2119 requires taking or attempting to take a vehicle by force and violence or by

intimidation, and the crime of carjacking carries with it a substantial risk of the use of physical force.   See United States v. Moore , 43 F.3d 568, 572-73 (11th Cir. 1995); United States v. Mohammed , 27 F.3d 815, 819 (2d Cir. 1994);   United States v. Singleton , 16 F.3d 1419, 1423 (5th Cir. 1994) ("Carjacking is always and without exception a 'crime of violence' as that term is defined in 18 U.S.C. § 924(c)(3).").  Both the government and Mr. Brown acknowledge that several courts have held that a conspiracy to commit a federal crime of violence is a crime of violence for purposes of § 924(c).   See, e.g., United States v. Elder , 88 F.3d 127, 129 (2d Cir. 1996) (Hobbs Act conspiracy to commit robbery);   United States v. Harper , 33 F.3d 1143, 1149 n.5 (9th Cir. 1994) (conspiracy to commit bank robbery);  United States v. Patino , 962 F.2d 263, 267 (2d Cir. 1992) (conspiracy to kidnap);   United States v. Johnson , 962 F.2d 1308, 1311-12 (8th Cir. 1992) (conspiracy to commit bank robbery).

   Relying upon  United States v. King , Mr. Brown argues that this approach is foreclosed in this circuit.  In    King, the court held that a state conviction for conspiracy to commit armed robbery was not a conviction of a violent felony under 18 U.S.C. § 924(e).  979 F.2d at 802-03.  Although the definition of a violent felony under § 924(e) and a crime of violence under § 924(c) are essentially identical,   King is easily distinguishable.  The   King panel applied New Mexico law which focuses solely on the unlawful agreement and does not require

an overt act, thus, the underlying substantive offense could not be considered. See King, 979 F.2d at 803. Moreover, in keeping with this circuit's past approach of looking only at the statutes involved, the court declined to look at the underlying conduct. See id. at 803-04.

In this case, an overt act in furtherance of the object of conspiracy was an element of the conspiracy. See Salinas v. United States, 522 U.S. 52, 63 (1997) (noting overt act requirement of § 371 conspiracy). This requirement plainly invites consideration of the underlying substantive offense – here § 2119 – because the overt act must be evaluated with reference to the object of the conspiracy. Section 2119 requires not only intent to cause death or serious bodily harm, but also the attempted taking or taking of a vehicle by force or violence or by intimidation. We recognize that conspiracy punishes collective criminal agreement rather than the substantive offense. See Iannelli v. United States, 420 U.S. 770, 777-779 (1975). However, at a minimum, an agreement to accomplish the statutory elements of carjacking necessarily involves a substantial risk of physical force against the person or property of a victim, § 924(c)(2)(b). The district court did not err in refusing to dismiss count 4.

3.    In-Court Identification of the Defendants

Defendants contend that the in-court identification of them by the victim

was so unreliable as to be violative of due process. They base this contention on the following facts. On the night of the carjacking, the victim and one of his passengers were shown photo arrays, but neither could identify their assailants. Both were aware that the victim's vehicle had been recovered and arrests made. A few weeks later (January 1998), at a state court preliminary hearing, the victim identified Mr. Brown and Mr. Dixon, but not positively:

> I believe that's the individual, the farther one on the right, that held the gun at me; and I believe he was in the passenger's side of the car; and I believe the individual next to him was the driver of the car; but again, I can't be positive because there are very few things that one can be positive about in life.

I R. doc. at 17-18. The victim was then asked about whether he had been able to identify his assailants from the photo array. He explained:

> Not positively. There were no heights by the photographs so they were just basically head shots, not even really shoulders and also the photos - - I was suspicious of several of the photographs, but I did not positively ID anything.

Id. at 40. At the federal trial (August 1998), over defense objection, the victim was able to identify the Defendants from the photo arrays, and explain his inability to make earlier identifications. Mr. McClelland also identified and implicated the Defendants at trial. 10 R. 346-48.

Defendants contend that from the outset the victim undoubtedly was aware that the Defendants were included in the photo array, and that the appearance of the Defendants at the state preliminary hearing was "inherently suggestive."

- 12 -

They further argue that the federal trial identification from the photo array was "obviously suggestive and unreliable" because the Defendants were seated in federal court.

Whether identification procedures are violative of due process is a legal question reviewed de novo. United States v. Smith, 156 F.3d 1046, 1050 (10th Cir. 1998), cert. denied, 119 S. Ct. 844 (1999). The admission of in-court identification testimony violates due process only when, under the totality of the circumstances, it was tainted by unnecessarily suggestive pretrial identification procedures creating a "very substantial likelihood of misidentification." Id. at 1051. In evaluating the likelihood of misidentification, a court considers "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neil v. Biggers, 409 U.S. 188, 199-200 (1972). These factors are weighed against any "corrupting effect of the suggestive identification itself." Manson v. Brathwaite, 432 U.S. 98, 114 (1977).

Defendants have failed to demonstrate that the pretrial identification procedures in this case were "unnecessarily suggestive." Id. at 113. In United States v. Aigevbolle, 772 F.2d 652, 653-54 (10th Cir. 1985), we held that the

inability to identify a defendant from a photo array does not render a subsequent in-court identification inadmissible, rather that inability goes to the weight of the witness's testimony, not its admissibility. Likewise, though the presence of Defendants at the state preliminary hearing may have been suggestive given the nature of such a hearing, that is not enough to render the subsequent trial identification inadmissible. See Johnson v. Sublett, 63 F.3d 926, 928-29 (9th Cir. 1995). Finally, the victim's identification of the Defendants at the trial, including another look at the photo arrays, while suggestive, occurred in the presence of the jury and the victim was fully and fairly cross-examined about the process and his previous inability to positively identify the Defendants. See Aigbevbolle, 772 F.2d at 654.

Moreover, the evidence in this case plainly supports the admissibility of the trial identification, regardless of suggestiveness. The victim saw his assailants in two places, at the nightclub and at his destination. He had an opportunity to observe Defendants when asked for information as a ruse. He also observed them during robbery and carjacking which were choreographed by a sequence of orders and demands. Though the events were no doubt stressful, the victim had the presence of mind to consider the likely consequences of complying with the Defendants' demands and refusing to run. His description of the assailants contained important and specific information including height and

clothing.  See 8 R. 56.  Height was particularly important because the victim (6'
6" tall) testified that the gunman was slightly shorter and the driver that hit him
was significantly shorter, having to reach to hit the victim.        Id. at 55.  The
relatively short time period between the crime, pretrial identification and trial
identification does not undermine the trial identification.  The in-court
identification testimony in no way violated due process, particularly given that
the victim's identification and implication of the Defendants was corroborated
completely by Mr. McClelland.


4.    Gang Affiliation Evidence

Defendants claim that the district court erred in allowing evidence that they
and Mr. McClelland were members of the "Folks" gang.  They argue that this
evidence violated Rule 404(b) because it was unfairly prejudicial and not related
to the ultimate issues in the case.  The government responds that the evidence
was admitted under Rule 401 and 403, not 404(b).  Moreover, the common gang
affiliation was relevant to show the existence of a conspiracy and the relationship
between the witness and the defendants.

We review the district court's evidentiary ruling for an abuse of discretion.
United States v. Knox  , 124 F.3d 1360, 1363 (10th Cir. 1997).  It is unnecessary
for us to decide under which Rule the district court admitted the evidence.  "If

evidence is admissible under any of the Federal Rules of Evidence, this court may affirm the admission." United States v. Robinson , 978 F.2d 1554, 1562 (10th Cir. 1992).

In Robinson , this court allowed gang affiliation evidence to prove a conspiracy among the defendants.

> We are persuaded that associational evidence may be directly relevant on the issues of formation, agreement and purpose of a conspiracy. Circumstantial evidence is often the strongest evidence of conspiracy. Gang membership helped to establish an agreement among the subjects, the purpose of the conspiracy and knowledge on the part of these defendants.

Id. at 1562-63 (citation omitted). Gang affiliation was also admitted in United States v. Sloan , 65 F.3d 149, 151 (10th Cir. 1995), to "show the basis of the relationship between the defendant and witnesses." See also United States v. Thomas , 86 F.3d 647, 652 (7th Cir. 1996) ("Gang affiliation is particularly relevant, and has been held admissible, in cases where the interrelationship between people is a central issue."); United States v. Easter , 66 F.3d 1018, 1020-21 (9th Cir. 1995) (gang affiliation relevant to question of identity).

Here, the gang affiliation was clearly relevant. First, when arrested, Mr. Brown and Mr. Dixon both alleged that they had no part in stealing the victim's vehicle. Their involvement in the "Folks" gang, along with Mr. McClelland, the driver of the victim's vehicle, goes to the issues of identity, joint venture and

existence of a conspiracy. Second, gang affiliation illuminates the relationship between Mr. McClelland and the Defendants, not only as to the robbery and carjacking, but also as to Mr. McClelland's subsequent testimony against the Defendants. The district court did not abuse its discretion.

6.    Commerce Clause

Defendants argue that the carjacking statute violates the commerce clause by failing to meet the substantial interstate nexus requirement, in light of United States v. Lopez, 514 U.S. 549 (1995). We previously rejected this claim in United States v. Romero, 122 F.3d 1334, 1339 (10th Cir. 1997), cert. denied, 118 S.Ct. 1310 (1998), and follow our decision in that case. "[I]t is almost axiomatic that one panel of this court cannot overrule another panel." United States v. Alvarez, 142 F.3d 1243, 1247 (10th Cir. 1998), cert. denied, 119 S. Ct. 242 (1998).

7.    Double Jeopardy

Defendants argue that the trial court erred in denying a motion to dismiss Count 3 (use of a firearm during a crime of violence) because separate convictions for carjacking and use of a firearm during the carjacking violates the double jeopardy clause. This specific argument was rejected in United States v.

Overstreet , 40 F.3d 1090 (10th Cir. 1994) (relying, in part, on       Missouri v. Hunter , 459 U.S. 359 (1983)).  Defendants attempt to argue that       Hunter  was somehow overruled by   United States v. Dixon   , 509 U.S. 688 (1993), thus calling our opinion in   Overstreet  into question.  This argument is unpersuasive since nothing in the   Dixon  opinion suggests that   Hunter  was overruled;  Overstreet  was decided after   Dixon  and relied upon it as well as upon     Hunter ; and the Supreme Court has subsequently quoted    Hunter  with approval in   Rutledge v. United States , 517 U.S. 292, 303 (1996). The district court properly denied the motion to dismiss Count 3.

8.      Government Promises & the Federal Anti-Gratuity Statute

Defendants assert that government promises not to file federal charges against Kyree McClelland in exchange for his testimony violate the Federal Anti-Gratuity Statute, 18 U.S.C. § 201(c)(2).  This issue was decided adversely in United States v. Singleton   , 165 F.3d 1297 (10th Cir. 1999) (en banc),     cert. denied ,

119 S.Ct. 2371 (1999), and resolves Defendants' claim.

9.      Bodily Injury Enhancement

Defendants challenge the increase in their offense level under USSG

§ 2B3.1(b)(3)(A) which was based on the district court's finding that the victim sustained "bodily injury." They argue that the victim's injuries were not "significant" and therefore do not rise to the level of a "bodily injury" under the Sentencing Guidelines.

"The district court's determination of the significance of a bodily injury is a finding of fact we review for clear error." United States v. Perkins, 132 F.3d 1324, 1326 (10th Cir. 1997). The Guidelines define bodily injury as "any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." USSG § 1B1.1, comment. (n.1 (b)). "'[T]o be "significant" an injury need not interfere completely with the injured person's life but cannot be wholly trivial and, while it need not last for months or years, must last for some meaningful period.'" Perkins, 132 F.3d at 1326 (citation omitted). Visible injuries such as bumps, bruises, and redness or swelling are sufficient to constitute "bodily injury." See id.; see also United States v. Pandiello, 184 F.3d 682, 685-86 (7th Cir. 1999) (red welts and shoeprint mark on back constitute bodily injury); United States v. Hoelzer, 183 F.3d 880, 882 (8th Cir. 1999) (finding that bruises resulting from "being hit, kicked and stepped on by the defendants" was bodily injury); United States v. Hamm, 13 F.3d 1126, 1128 (7th Cir. 1994) (holding that bruises were "painful and obvious" bodily injury).

Here, the victim sustained bleeding and a severe headache from the "half a dozen" blows he received, as well as swelling, bruises, cuts and lumps on his face.  See 2 R., doc. 148 at 4; 8 R. 66-67; 11 R. 592; 14 R. 34.  These injuries are clearly "painful and obvious" and the district court did not err in finding that the incident involved bodily injury.

AFFIRMED.