### III.

Adams also challenges his sentence on the ground that his prior convictions were determined by the district court by a preponderance of the evidence at sentencing, rather than submitted to the jury and proven beyond a reasonable doubt, in violation of the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  Our decision in *United States v. Gatewood*, 230 F.3d 186 (6th Cir. 2000), which held that prior convictions are not elements of the offense, but mere sentencing factors that need not be proven beyond a reasonable doubt to a jury, disposes of Adams's claim.  *See Gatewood*, 230 F.3d at 192; *see also Apprendi*, 530 U.S. at 490 ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (emphasis added).  Under *Gatewood*, Adams's sentence is affirmed.

### IV.

For the foregoing reasons, we AFFIRM Adams' convictions and sentence.

---

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0317P (6th Cir.)
File Name: 01a0317p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

v.                                            No. 99-6008

TERRY L. ADAMS,
      *Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 97-20226—Jon Phipps McCalla, District Judge.

Argued:  March 7, 2001

Decided and Filed:  September 10, 2001

Before:  MARTIN, Chief Judge; MOORE, Circuit Judge; TARNOW, District Judge.[*]

---

## COUNSEL

**ARGUED:**  Randall P. Salky, THE LAW OFFICE OF RANDALL SALKY, Memphis, Tennessee, for Appellant.  Tony R. Arvin, ASSISTANT UNITED STATES

---

[*] The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:** Randall P. Salky, THE LAW OFFICE OF RANDALL SALKY, Memphis, Tennessee, for Appellant. Tony R. Arvin, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee.

————————

## OPINION

————————

BOYCE F. MARTIN, JR., Chief Judge. Terry L. Adams appeals his convictions under the federal carjacking statute, codified at 18 U.S.C. § 2119, and his corresponding firearm convictions under 18 U.S.C. § 924(c), on the grounds of insufficient evidence. He also raises a challenge to his sentence under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). For the following reasons, we affirm his convictions and sentence.

### I.

On August 15, 1996, Adams approached Ray Hunter, who was washing his employer's Lexus ES 300 at the Sunshine Car Wash, in Memphis, Tennessee, pointed a firearm at his face, and ordered him to walk to the back of the car and give Adams the keys to the Lexus. Adams then pushed Hunter in the back with his gun and ordered him to continue walking. Adams drove away in the Lexus.

On August 31, Adams appeared at the driver's window of Pamela Witmer's Nissan Pathfinder, pointing a firearm at her. Witmer, believing Adams wanted the cash she had just withdrawn from an automated teller machine, threw her money at Adams, and then attempted to exit the vehicle. Adams and Witmer engaged in a small scuffle as she tried to exit the car while Adams tried to enter it. Finally, Witmer fell to the ground, and Adams began screaming for the keys to the Pathfinder, all the while pointing his firearm at Witmer. When Adams finally understood that the keys were already in the car, he picked up Witmer's money and drove away.

Adams physically scuffled with her while attempting to enter her vehicle, resulting in Witmer falling with enough force to cut her leg and arm. Testimony established that Adams robbed Wallace Reed at gunpoint the same day that he fired shots at a police officer.[2] And Dianne and Garland Reed (no relation to Wallace) testified that Adams would have run over Dianne Reed's head with her own vehicle, had she not rolled out of the way at the last minute. Taking this evidence as we have presented it here, in the light most favorable to the United States, we find that it shows that Adams possessed the present means to carry out his threats to harm each victim. From that, the jury could have inferred that Adams made actual, rather than empty, threats and thus that he possessed the specific intent to seriously harm or kill his victims if necessary. Accordingly, we affirm all six carjacking convictions. Because we affirm Adams' carjacking convictions, we will affirm his derivative Section 924(c) convictions as well.

————————

[2]We are aware of several cases overturning convictions for both specific intent crimes and crimes committed with a "dangerous weapon" absent proof of a loaded gun. *See, e.g., United States v. Turner*, 42 M.J. 689, 691 (A. Ct. Crim. App. 1995) (vacating assault with dangerous weapon conviction upon failure to prove loaded gun because, when presented as firearm and not bludgeon or missile, "under no conceivable circumstances is an unloaded pistol capable of inflicting any bodily harm"); *United States v. Bush*, 47 C.M.R. 532, 535 (C.G. Ct. Crim. App. 1973) ("[o]bviously shooting a blank is not likely to produce death or grievous bodily harm, just as presenting an unloaded rifle is not likely to have such a result"); *People v. Sylva*, 76 P. 814, 815 (Cal. 1904) ("Pointing an unloaded gun at another, accompanied by a threat to discharge it, without any attempt to use it except by shooting, does not constitute an assault"); *Fastbinder v. State*, 42 Ohio St. 341 (Ohio 1884) (vacating assault with intent to kill conviction upon failure to prove loaded gun). In this case, the jury could have inferred that Adams robbed Reed with a loaded gun from the temporal proximity of Adams' firing shots at a police officer and the robbery. Therefore, we need not decide today whether, when the only proof of intent is that the defendant brandished a gun and threatened to shoot his victim, the United States would have to prove that the gun was loaded, and thus that he could have carried out his threat, in order to sustain a Section 2119 conviction.

courts have held that a threat to harm does not in itself constitute intent to harm or kill." *Id*. at n.13 (citing *Hairston v. State*, 54 Miss. 689, 694 (1877) ("[W]e have found no case of a conviction of assault with intent to kill or murder, upon proof only of the levelling of a gun or pistol.") and *Meyers v. Clearman*, 101 N.W. 193, 194 (Iowa 1904) (drawing distinction between aiming a revolver with intent to inflict great bodily harm and aiming a revolver with intent only to frighten)); *see also Beall v. State*, 101 A.2d 233, 236 (Md. 1953) (reiterating that the threatened use of a deadly weapon does not establish intent to kill as a matter of law).

It is undisputed that Adams threatened each of his six carjacking victims with a gun. We must therefore determine whether sufficient evidence existed from which the jury could have determined that Adams's threats were actual rather than empty, and that they were indicative of his conditional intent to seriously harm or kill his victims. We think making this determination must require, at the least, a showing that Adams could have carried out his threats to harm his victims. *See Holloway*, 526 U.S. at 11-12 (requiring the United States to prove that "the defendant would have at least attempted" to carry out his intimidating threat to kill or cause serious bodily harm); *see also Connors*, 97 N.E. at 647 (applying conditional intent doctrine to those cases where the assailant, "*with the present ability* to destroy life or do great bodily harm," makes a threat and an unlawful demand) (emphasis added). We find that in this case, taking all the evidence in the light most favorable to the United States, a rational jury could have found that Adams made actual threats, and thus possessed the requisite specific intent, during each of the six carjackings at issue.

The evidence showed that Adams used a gun to subject Ray Hunter, Dana Peters, and Clarence Johnson to an offensive touching during their carjackings. We think that physically touching a victim with a weapon, standing alone, is sufficient to justify a finding that the victim faces an imminent threat of physical harm, and indicates an intent on the part of the defendant to act violently. Pamela Witmer testified that

Around 2:00 a.m. on September 12, Officer Donna Roach of the Memphis Police Department observed Adams and his brother, Chester, in the stolen Lexus. Officer Roach followed the Lexus until the Adams brothers fired shots at her car. Half-an-hour later, police found the Lexus abandoned and smoldering from a recent fire, with a Ruger nine millimeter pistol near its right rear tire. Later that evening, Adams approached Wallace Reed as he was reentering his Ford Taurus at a gas station, demanding his money and car. Adams pointed a firearm at Reed's stomach, took his money and car key, and drove off in Reed's Taurus.

On September 20, Adams placed a gun to Dana Peters's head and pulled him out of his Honda Civic, repeatedly demanding money. Adams searched Peters's wallet and took his watch, then pushed the firearm into Peters's stomach and searched his pockets. Finally, Adams pushed Peters and told him to run away. Adams drove off in Peters's Civic.

On August 31, 1997, Adams approached Clarence Johnson at a car wash, pointed a gun, and demanded his money and his GMC Sierra pickup truck. When Johnson explained he would need help undoing the barbecue cooker hitched to the back of the truck, Adams warned, "If you make one funny move, I'll blow your brains all over the back of that truck." Adams pushed the firearm into Johnson's neck while the two undid the hitch, then ordered him to turn around and walk away with his hands in the air. Adams fled in Johnson's truck.

On September 26, Dianne and Garland Reed were each entering their own vehicles, parked next to each other, when Adams ran up to Dianne, pointed an assault rifle at her, and demanded the keys to her Toyota Avalon. When Garland threw a bottle to distract Adams, Adams turned and pointed the rifle at him, causing him to back away slowly. Dianne gave Adams the keys to her car but collapsed in fear behind the Avalon's rear tires. Dianne managed to roll out of the Avalon's way shortly before Adams backed out of the parking spot and drove off.

On October 1, Memphis police and United States Secret Service agents arrested Adams after chasing him in the stolen Avalon throughout downtown Memphis. During the pursuit, Adams rammed police cars, endangered pedestrians by driving on sidewalks, and exchanged gunfire with both state and federal agents. After arresting Adams, police recovered from the Avalon, among other items, a loaded flare pistol, a knife, an unloaded pistol, and a loaded assault rifle.

On March 24, 1999, a jury found Adams guilty of six counts of carjacking in violation of 18 U.S.C. § 2119, two counts of robbery in violation of 18 U.S.C. § 1951, nine counts of possessing a firearm during a crime of violence in violation of 18 U.S.C. § 924(c), five counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), and three counts of assault on a federal officer in violation of 18 U.S.C. § 111. The district court sentenced Adams to a life term of imprisonment plus one hundred sixty-five years, to be followed by three years of supervised release.[1] Adams timely appealed his convictions for carjacking and for using a firearm during a crime of violence. Adams also filed a supplemental brief appealing his sentence as a violation of *Apprendi*.

## II.

We review a claim of insufficient evidence in the light most favorable to the United States. *See United States v. White*, 932 F.2d 588, 589 (6th Cir. 1991). We will uphold a conviction if we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See id.* Circumstantial evidence alone may sustain a conviction under this deferential standard of review. *See United States v. Clark*, 928 F.2d 733, 736 (6th Cir. 1991).

---

[1]The district court imposed the Section 2119 penalties to run concurrent with Adams's life sentence, and added five consecutive years for the first Section 924(c) violation, and twenty consecutive years for each additional count.

The federal carjacking statute punishes the taking or attempted taking of a motor vehicle from the person or presence of another by force and violence or by intimidation. Regardless of whether the carjacker obtains possession of the car through force and violence or through intimidation, however, the defendant must possess the specific intent to cause "death or serious bodily harm." *See* 18 U.S.C. § 2119. To satisfy the specific intent requirement, the United States must show more than that the defendant committed the criminal acts; it must also show evidence of the specific mental culpability at issue. *See United States v. Kimes*, 246 F.3d 800, 807 (6th Cir. 2001) ("[A] general intent crime requires the knowing commission of an act that the law makes a crime. A specific intent crime requires additional 'bad purpose.'") (citation omitted).

In 1999, the United States Supreme Court held that proof that a defendant possessed a "conditional intent" to cause death or serious bodily harm satisfies the Section 2119 specific intent requirement. *See Holloway v. United States*, 526 U.S. 1, 10 (1999) (citing *People v. Connors*, 97 N.E. 643, 645 (Ill. 1912)). In the context of the federal carjacking statute, then, a defendant will be guilty of violating Section 2119 if the United States can show beyond a reasonable doubt that a defendant had the intent to kill or seriously harm his carjacking victim if the victim resisted, even if the victim did not in fact resist and no attempts to inflict such harm were made.

*Holloway* rejected the argument that allowing proof of conditional intent would render the statute's specific intent requirement superfluous. Drawing a distinction between the type of proof that would satisfy the specific intent element and that which would satisfy the statute's *actus reus* – taking a vehicle "by force and violence or by intimidation" – the Supreme Court stated that "[w]hile an empty threat, or intimidating bluff, would be sufficient to satisfy the latter element, such conduct, standing on its own, is not enough to satisfy § 2119's specific intent element." *Holloway*, 526 U.S. at 11. It further noted that "[i]n somewhat different contexts,