**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 31 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

SERGIO PEREZ-AMARO,

Defendant - Appellant.

No. 03-1324

(D. Colorado)

(D.C. No. 02-CR-575-N)

**ORDER AND JUDGMENT** *

Before **TACHA** , Chief Circuit Judge, and **ANDERSON** and **BALDOCK** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Sergio Perez-Amaro pled guilty to nine counts of transporting illegal aliens, in violation of 8 U.S.C. § 1324, and aiding and abetting, in violation of 18 U.S.C. § 2. He was sentenced to fifteen months imprisonment on each count, to run concurrently, and three years of supervised release. He appeals his sentence, arguing that the district court erred in applying a sentencing enhancement and in failing to depart downward.

Perez-Amaro's appointed counsel has filed a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), because he has concluded that this appeal is "wholly frivolous, after a conscientious examination of it," <u>id.</u> at 744, and he has so advised this court and requests permission to withdraw as counsel. After carefully reviewing the record, we agree with Perez-Amaro's counsel that Perez-Amaro's appeal presents no non-frivolous issues, so we grant counsel's request to withdraw and we affirm Perez-Amaro's sentence.

**BACKGROUND**

On November 4, 2002, Colorado State Police received a report that a van carrying a number of people had veered off a winding highway in snowy and icy conditions, hitting a parked trailer. When the police arrived, they determined that the van had been carrying ten individuals, that the van was registered to Perez-Amaro, and that he had been driving the van. Believing that this might involve

the smuggling of illegal aliens, the Colorado police requested assistance from the Immigration and Naturalization Service ("INS"). When INS Special Agent Edward Tolbert arrived at the scene, he discovered that four passengers had been transported to a hospital for treatment of their injuries, the five remaining passengers admitted to being illegal aliens from Mexico who were being transported in the van, and Perez-Amaro, who had left his driver's license in the van, was gone. He was subsequently found and arrested at a nearby hotel.

On November 5, 2002, INS Special Agent Reynaldo Lovos interviewed Perez-Amaro in Spanish, after reading him his Miranda rights. Perez-Amaro admitted that he knew all the passengers were illegal aliens, and that they had agreed to pay him for transporting them. He therefore pled guilty to nine counts of transporting illegal aliens and aiding and abetting.

Prior to sentencing, the Presentence Investigation Report ("PSR") recommended that Perez-Amaro receive two enhancements not mentioned in the plea agreement. The first, pursuant to United States Sentencing Commission, Guidelines Manual ("USSG"), §2L1.1(b)(5) (Nov. 2002) was for "recklessly creating a substantial risk of death or serious bodily injury to another person." The second, pursuant to USSG §2L1.1(b)(6)(1), was for "bodily injury" resulting from the offense. After receiving additional clarifying information, the district court denied the enhancement for recklessly creating a risk of death or injury,

finding that the van had been equipped with seatbelts and the proper number of seats, and that the accident was caused by icy road conditions rather than reckless driving. The court granted the enhancement for bodily injury because four of the passengers had been injured in the accident and treated at a local hospital, one for a fractured ankle and one for a head laceration which required stitches. Finally, the court considered Perez-Amaro's motion for downward departure, but concluded that none of the proffered grounds for departing downward took the case out of the heartland. The court therefore sentenced Perez-Amaro to fifteen months imprisonment, at the low end of the Guideline range.

## DISCUSSION

The only two issues on which Perez-Amaro did not prevail at sentencing were the court's decision to enhance his sentence for bodily injury resulting from the accident and its refusal to depart downward.

### I. Bodily Injury Enhancement

"The district court's determination of the significance of a bodily injury is a finding of fact we review for clear error." United States v. Brown, 200 F.3d 700, 709 (10th Cir. 1999) (further quotation omitted). The Guidelines define "bodily injury" as "any significant injury; e.g., an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought." USSG §1B1.1,

comment. (n.1(b)). We have held that "to be 'significant' an injury need not interfere completely with the injured person's life but cannot be wholly trivial and, while it need not last for months or years, must last for some meaningful period." Brown, 200 F.3d at 709 (further quotation omitted). "Visible injuries such as bumps, bruises, and redness or swelling are sufficient to constitute 'bodily injury.'" Id.

The PSR indicated that four of the passengers in the van received medical treatment for the following conditions: one suffered "a chin abrasion and a contusion on his left hip"; one suffered a "minimally displaced fracture of the left ankle"; one was evaluated for "possible spine injuries"; and one had a "scalp laceration for which he received stitches." PSR ¶ 24, R. Vol. V. The district correctly enhanced Perez-Amaro's sentence because of those "bodily injuries."

## II. Downward Departure

"We 'cannot exercise jurisdiction to review a sentencing court's refusal to depart from the Guidelines, either upward or downward, unless the court refused to depart because it interpreted the Guidelines to deprive it of the authority to do so.'" United States v. Busekros, 264 F.3d 1158, 1159 (10th Cir. 2001) (quoting United States v. Fortier, 180 F.3d 1217, 1231 (10th Cir. 1999) (collecting cases)). The district court clearly understood that it had the authority to depart:

> The defendant advances three bases for departure. First, he says he attempted to render aid to the victims. Second, he points to

what he characterizes as his excellent employment history. Third, he cites the fact that he will not have full access to prison programs because he is a deportable alien.

While the first two bases for departure may mitigate the sentence to be imposed within the guideline range, the Court is not persuaded that they take the case outside the heartland and thus can be a basis for departure.

The third basis does not make this case atypical because there are many deportable aliens in the Bureau of Prisons custody who have committed immigration offenses and find themselves in this same situation.

The Court therefore declines to depart on any grounds advanced or any combination of such grounds.

The defendant also moves for a downward departure on the ground that his calculated criminal history category significantly overrepresents the seriousness of his criminal history or the likelihood that he will commit further crimes.

The Court disagrees with this position.

At the time he committed the [instant] offense, the defendant was on probation for a felony, assault with a firearm on a person. He has been convicted of several crimes which have not even been counted in calculating his criminal history. The Court finds Criminal History Category II to be entirely appropriate, and a departure to Category I, which is reserved for people with practically no criminal history, would be inappropriate.

Tr. of Sentencing, R. Vol. IV at 11-12. The court simply determined that the facts did not warrant a downward departure. We therefore lack jurisdiction to review the court's refusal to depart downward.

**CONCLUSION**

We GRANT counsel's request to withdraw and AFFIRM Perez-Amaro's sentence.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge