**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0768n.06

09-5240

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Nov 16, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| TAMADGE HOLMAN, | ) | **OPINION** |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

**Before: MARTIN, CLAY and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.** A federal grand jury returned an indictment charging Tamadge Holman with carjacking, 18 U.S.C. § 2119, using and carrying a firearm during and in relation to a carjacking, 18 U.S.C. § 924(c), and being a felon in possession of a firearm, 18 U.S.C. § 922(g). Holman pleaded guilty to the felon-in-possession count and does not appeal that conviction. A jury found Holman guilty of the remaining two counts. Holman appeals, asserting that there was insufficient evidence to sustain the carjacking conviction. We **AFFIRM**.

**I.**

Trial testimony established that on the evening of December 15, 2007, Nathaniel Hicks and Timothy Walker, members of a band, performed at the New Club 5000 in Memphis, Tennessee. Around 2:00 a.m. on December 16, after having been paid in cash for their performance, they were loading band equipment in their respective cars in the club's parking lot.

1

Walker and Hicks testified that Holman approached them individually in the parking lot and asked how much it cost to get into the club. Walker quickly answered and reentered the club as Hicks was going back out to the parking lot with more band equipment. Walker testified that several minutes later, Hicks ran in the club saying "Man this guy just tried to kill me." The club owner then called the police.

Hicks, the victim, testified that he saw Holman approach Walker in the club parking lot, and that after Walker went back into the club, Holman approached Hicks as he loaded equipment into his car. Holman asked Hicks how much it cost to get in the club, Hicks replied that he could probably get in free and then went back into the club to get more of his equipment. He emerged from the club, did not see Holman anymore, and started his car, a 1988 Lincoln Town Car. Hicks's intention was to start his car, lock it, and retrieve his bass guitar from the club while the car warmed up. He testified that he had two keys for the car and would not have left it running and unlocked.

Hicks testified that right after starting his car, Holman opened his car door and pointed a gun at him. Hicks said to Holman, "Man are you crazy," and tried to pull the door shut, but could not because Holman's arm was in the door. With Holman's gun six inches away from his head, Hicks managed to grab Holman's hand, aim the gun away from his face, and with his other hand reached to unlatch his seatbelt, at which time Holman said, "Don't reach for nothing. Don't reach for nothing, don't you know I'll kill you." Hicks managed to get out of the car, the two "wrestled all the way around the car until [Hicks] managed to get[Holman] on the roof of the trunk." As they wrestled, the gun went off. Holman then managed to throw Hicks off and aimed the gun at him, saying, "Oh, I got you now." At that point, Hicks ran back into the club and said, "This guy's

2

shooting at me." Hicks testified that after the police were called, he "peeked around the corner. The next thing you know, my car[']s gone with my equipment in it."

Hicks testified that the first time Holman made a menacing move toward him with the gun was when Hicks was sitting inside his car. At the close of the Government's proofs, Holman moved for a judgment of acquittal, which the district court denied. Holman then testified that his intent on the evening in question was to rob someone coming out of the club, not to carjack someone. Holman's testimony was in accord with Hicks's, except Holman testified that when he initially approached Hicks, Hicks's car was already running, and that he did not threaten to kill Hicks. Holman testified that the reason he did not ask for Hicks's money or wallet is that he "never got a chance to." He testified that he did not shoot at Hicks because he never intended to harm anyone, just to rob someone, and that he drove away in Hicks's car only to get away from the scene as quickly as possible. Holman testified that after evading the police several times, he parked Hicks's car. When he realized the police were right behind him, he jumped out of the car and ran, and that was when the police shot him in the elbow. Holman did not return fire or otherwise discharge his gun.

After the defense rested, Holman renewed his motion for a judgment of acquittal, again arguing that there was insufficient evidence of intent to kill or seriously harm and of the car having been taken from the person or presence of another. The district court denied the motion. The jury returned guilty verdicts on both counts. The district court imposed concurrent 96-month sentences for the carjacking and felon-in-possession counts, and a consecutive 120-month sentence for using a firearm during a carjacking, followed by three years' supervised release.

3

## II.

In reviewing insufficiency-of-the-evidence claims this court assesses the evidence in the light most favorable to the government and determines whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Fekete*, 535 F.3d 471, 476 (6th Cir. 2008).

### A. Specific Intent Element: to Cause Death or Serious Bodily Harm

To prove a violation of the federal carjacking statute the government must prove that the defendant (1) *with the intent to cause death or serious bodily harm*, (2) took a motor vehicle, (3) that had been transported, shipped, or received in interstate or foreign commerce, (4) from the person or presence of another (5) by force and violence or by intimidation. 18 U.S.C. § 2119 (emphasis added). "Regardless of whether the carjacker obtains possession of the car through force and violence or through intimidation . . . the defendant must possess the specific intent to cause 'death or serious bodily harm.'" *United States v. Adams*, 265 F.3d 420, 423-24 (6th Cir. 2001). To satisfy the specific intent requirement, the Government "must show more than that the defendant committed the criminal acts; it must also show evidence of the specific mental culpability at issue." *Id.* at 424.

### 1.

Holman argues that he made only an empty threat to Hicks and that empty threats are insufficient to establish conditional intent. *Holloway v. United States*, 526 U.S. 1 (1999). *Holloway* held that proof that a defendant possessed a conditional intent to cause death or serious bodily harm at the time he demands or takes control of the car satisfies the specific intent requirement of § 2119; the Government is not required to prove that the defendant had an unconditional intent to kill or harm in all events. *Id.* at 6-8, 11-12; *see also Fekete*, 535 F.3d at 476-77.

4

Holman's argument has several flaws. First, empty threats, standing alone, are insufficient to establish the requisite conditional intent for carjacking under *Holloway* . 526 U.S. at 11 (noting that an empty threat or intimidating bluff would be sufficient to satisfy the by-force-or-intimidation element of § 2119, but that "such conduct, standing on its own, is not enough to satisfy § 2119's specific intent element"); *Fekete*, 535 F.3d at 478 (same). It was for the jury to determine whether Holman's pointing a gun at Hicks's head while Hicks sat in the car, and saying to Hicks, "don't reach for nothing, don't you know I'll kill you," constituted an actual threat, as opposed to only an empty threat, and whether Hicks possessed the requisite specific intent for carjacking, *see United States v. Adams*, 265 F.3d 420, 425 (6th Cir. 2001) (holding that the jury could infer from evidence that the defendant possessed the present means to carry out his threats to harm that the defendant possessed requisite specific intent for carjacking). Second, Holman overlooks that after *Holloway*, this court found sufficient evidence of conditional intent in several cases in which the defendants did not shoot or shoot at their victims. For example, in *Fekete*, this court observed that carjacking may be established if the Government "can show beyond a reasonable doubt that a defendant had the intent to kill or seriously harm his carjacking victim if the victim resisted, even if the victim did not in fact resist and no attempts to inflict such harm were made." 535 F.3d at 477 (conditional intent found where defendant pointed what jury could have determined was a loaded gun at truck passenger's stomach while telling him to exit the truck) (internal citations omitted). Similarly, in *Adams*, 265 F.3d at 424-25, this court upheld carjacking convictions where the defendant threatened several of the victims with a gun, concluding that a physical touching of a victim with a weapon, standing alone, "is sufficient to justify a finding that the victim faces an imminent threat of physical harm, and indicates an intent on the part of the defendant to act violently." And, in *United States*

5

*v. Glover*, 265 F.3d 337, 340-42 (6th Cir. 2001), this court upheld the carjacking conviction of the defendant McDonald, who, along with Glover, approached the victim while she was seated in her vehicle, raised his shirt to reveal a gun, said to the victim, "drop your money, bitch," put a gun to the victim's head and again told her to drop her money, demanded the victim's wedding rings, then told the victim to move to the passenger's seat so he could take her somewhere, and threatened to shoot the victim when she started to get out of the car, but did not harm the victim as she escaped into a store.

This court in *Fekete* held that "[o]nce the government produces evidence of intent beyond the simple fact that the defendant brandished a firearm, the factfinder is to look at the totality of the circumstances to evaluate whether the defendant's words and actions sufficiently demonstrated a conditional intent to cause death or serious bodily harm." 535 F.3d at 481.

Here, the totality of the circumstances viewed in the light most favorable to the Government is that Holman pulled open Hicks's car door shortly after Hicks started the engine, pointed a loaded gun at Hicks's head while Hicks was in the driver's seat, threatened Hicks's life, wrestled with Hicks and, when he recovered control of the gun after it discharged, again pointed the gun at Hicks and said, "I've got you now." Under the authorities discussed, there was sufficient evidence for a reasonable jury to conclude from Holman's words and actions that he possessed the specific intent to kill or do seriously bodily harm to Hicks.

## 2. Nexus Between Intent to Cause Death or Serious Bodily Harm and Taking of Vehicle

Holman's second argument is that even assuming he had the requisite intent to harm Hicks, a nexus is required between that intent and the taking of the car and that there was no such nexus

here. *Holloway* makes clear that such a nexus is required. *Holloway* is quoted in *United States v. Applewhaite*, 195 F.3d 679 (3d Cir. 1999), on which Holman relies:

> [t]he intent requirement of § 2119 is satisfied when the Government proves that at the moment the defendant demanded or took control over the driver's automobile the defendant possessed the intent to seriously harm or kill the driver if necessary *to steal the car* (or, alternatively, if unnecessary to steal the car).

> Thus, the statute

> directs the factfinder's attention to the defendant's state of mind at the precise moment he demanded or took control over the car "by force and violence or by intimidation." If the defendant has the proscribed state of mind at that moment, the statute's scienter element is satisfied.

*Applewhaite*, 195 F.3d at 685 (quoting *Holloway*, 526 U.S. at 12, 8; emphasis in *Holloway*). Holman argues that the required temporal nexus between the conditional intent to harm and the intent to take the car is absent in this case because "It was only after the victim ran away, the defendant was bleeding, the gunshot was starting to draw attention, and the car was sitting there with the door open and the engine on, that Holman formed the intent to steal the car and use it as a getaway vehicle." (Reply Br. at 3.) Holman asserts that "maybe [he] had the intent to use the gun on Hicks if Hicks refused to give up the cash. However, the car was taken as an afterthought in an attempt to get away from the crime scene. Therefore, the evil intent was solely for the purpose of getting the cash, and there was no nexus between the intent and the subsequent taking of the car." (Def.'s Br. at 14.)

*Applewhaite* is distinguishable from the instant case because the evidence there supported that the intent to kill was part of an attempted murder plot, not a carjacking.[1] In contrast, Holman's

---

[1]*Applewhaite* involved a married couple, the Romeros, who had separated several years earlier. Mrs. Romero had become romantically involved with another man, and the Romeros' separation was marked by arguments and violence, including on the morning of the day in question. That evening, Mrs. Romero called her husband to her home. When he arrived in his van, she told him to wait until she penned the dogs but, rather than doing so, she remained in place and stood

7

argument that he took Hicks's car only to get away from a robbery gone wrong contradicts the evidence when viewed in the light most favorable to the Government. Holman did not demand money or brandish a weapon at the times he could easily have attempted to rob Hicks or Walker, i.e., during his initial parking-lot encounters with them. It was only after Hicks got in his car and started

---

staring at Mr. Romero while he was knocked unconscious by three blows from behind. Mr. Romero awoke inside his van and saw Applewhaite driving the van and holding a gun. The two struggled, Romero was shot, and the van crashed. Applewhaite got out of the van, shot Romero two more times and ran from the scene. Romero survived, however. 195 F. 3d at 682.

Applewhaite and Mrs. Romero were convicted of conspiracy, attempted first-degree murder, kidnapping, and carjacking. The Third Circuit reversed the carjacking convictions for insufficient evidence of nexus between the intent to harm–the assault–and the taking of Romero's van. After quoting *Holloway*, *see* quotes *supra*, the Third Circuit concluded:

> Here, it is clear that the required scienter was never established. Although the defendants clearly intended to seriously harm or kill Eddie Romero, neither their evil intent, nor the force they employed in furtherance of it, had any nexus to the subsequent taking of his van. The force was employed in an attempt to harm Eddie Romero. It was not used to take his van.
>
> It is, of course, uncontested that Romero's van was taken after he was violently assaulted. But that does not establish that the force was used to get control of his van. Even when this record is viewed in the light most favorable to the government, it is clear that the prosecution failed to establish the required nexus between the assault and the taking. Rather, the record establishes that the van was taken as an afterthought in an attempt to get Romero's limp body away from the crime scene. That is not sufficient to establish the intent required under § 2119.
> . . . .
> [] The reason the defendants assaulted Romero was not to transport his body in his own car. Rather, the force was used solely for the purpose of bludgeoning Romero. That was the object of the assault. It was not the means of stealing his car. After defendants accomplished their objective, they dragged Romero's unconscious body to his car, and drove away. However, under *Holloway*, unless the threatened or actual force is employed in furtherance of the taking of the car, there is no carjacking within the meaning of 18 U.S.C. § 2119. Accordingly, the defendants' conviction for carjacking can not stand.

*Applewhaite*, 195 F.3d at 685-86.

8

the engine that Holman brandished a gun and threatened to kill him. Even after the ensuing struggle outside the car when Holman regained control of the gun, Holman did not ask or demand Hicks's wallet or money, but rather, said to Hicks "I've got you now," and drove off in Hicks's car after Hicks ran into the club. Thus, there was sufficient evidence of nexus between Holman's intent and his demand for, or taking control of, Hicks's car for the issue of Holman's intent to go to the jury.

### III. Element of Taking Vehicle "From the Person or Presence of Another"

Holman also argues that there was insufficient evidence that he took the car "from the person or presence of another." 18 U.S.C. § 2119. Relying on *United States v. Edwards*, 231 F.3d 933 (5th Cir. 2000), Holman asserts that where, as here, a victim has already fled the scene, is inside a building with solid walls, and is unable to view any part of the car, it cannot be reasonably said that the victim was "sufficiently near to the vehicle for it to be within reach, inspection, or control and, absent threat or intimidation, to be able to maintain control of [the vehicle]." *See Edwards*, 231 F.3d at 937 (adopting the Eleventh Circuit's interpretation of "person or presence" in *United States v. Kimble*, 178 F.3d 1163, 1167-68 (11th Cir. 1999)).[2]

---

[2] Holman notes that the *Edwards* standard is substantially the same as the jury instruction in this case. In the instant case the district court charged the jury, without objection:

> [T]he Government must prove beyond a reasonable doubt [] that the defendant took the vehicle from the person or presence of another.
>
> To take a motor vehicle, means to acquire possession or control of the vehicle for a period of time.
>
> The government does not have to prove that the defendant intended to permanently deprive the owner of possession of the vehicle, nor does the government have to prove that the victim was forced to leave the vehicle if the Government proves the defendant had control of the situation. To prove that the defendant took the vehicle from the person or presence of another, the government must prove that the victim was sufficiently within reach or observation of the vehicle that he . . .

As mentioned, on facts similar to the instant case, this court in *Glover*, 265 F.3d at 339-40, upheld carjacking convictions where one defendant drove the victim's car away after she escaped from the car and ran into a building. *Glover* relied on cases, including *Kimble*,178 F.3d 1163, in which the defendants entered a restaurant, forced employees to the ground at gunpoint, robbed them, and demanded to know who had a car parked outside the restaurant. The manager volunteered, the defendants took his keys and escaped in his car. On appeal, one defendant argued that because he took keys from a victim who was inside the restaurant and had a car parked outside, he did not take the car from the victim's presence. *Id.* at 1164-65. The Eleventh Circuit disagreed and upheld the carjacking conviction:

> [The manager] was sufficiently near to his vehicle when Blount and Kimble robbed him of it to sustain a conviction under § 2119. Wilcher's car was not several miles away, but parked right outside the restaurant. Had Wilcher not been in fear of his safety, he could have reached the car and prevented its taking. Thus, his car was within his "presence" when Blount and Kimble robbed him of it.

*Kimble*, 178 F.3d at 1168.

Holman's final argument is that *Kimble* and other cases the Government cites "only go as far as holding that when the defendant takes the keys directly from the person of the victim, the fact that the car is outside and the victim is inside does not prevent a carjacking conviction," and that, in the instant case, Holman took neither the keys nor the car from the person or presence of Hicks.

We note that a carjacking conviction was upheld in *United States v. Brown*, 200 F.3d 700 (10th Cir. 1999), where, similar to the instant case, the taking of the victim's car occurred when the

_____

could have retained his . . . possession of it, if not overcome by violence or prevented by fear. [R. 42 at 216-17.]

10

car was already running and after the victim had escaped into a residence.[3] The Tenth Circuit upheld the carjacking convictions against sufficiency challenges, including challenges to the "person or presence of another" element, 200 F.3d at 704, applying a definition of "presence" substantially similar to the district court's jury instruction in this case, *see supra* n.2:

> A car is stolen from the "presence" of an individual if "the victim [is] sufficiently near to the vehicle for it to be within reach, inspection, or control and, absent threat or intimidation, to be able to maintain control of it." *United States v. Kimble*, 178 F.3d 1163, 1168 (11th Cir. 1999) []. Having left the motor running and the lights on, the victim stepped away from his vehicle only briefly before he was accosted. The vehicle was plainly within his reach, inspection and control. Absent the threats and intimidation of Mr. Brown and Mr. Dixon, the victim would have returned to his vehicle and driven away. Indeed, once the victim fled, Mr. McClelland merely put the car in gear and drove it away. [] That the victim was in the residence, *having fled to protect his life*, when the vehicle was actually driven away by Mr. McClelland is of no moment. Regardless, we follow the Third and Eleventh Circuits in holding that the presence requirement of 18 U.S.C. § 2119 does not require "that the property be within easy touch" so long as "the car was close enough for the victim[] to have prevented its taking *had fear of violence not caused [him] to hesitate*." *Kimble*, 178 F.3d at 1167, 1168; *United States v. Lake*, 150 F.3d 269, 272 (3d Cir. 1998).

*Brown*, 200 F.3d at 705 (emphasis added, some citations omitted).

---

[3]In *Brown*, a trio of men riding in a car discussed robbing someone. They observed the victim in a parking lot getting in his SUV, in which there were several passengers, and followed him and his passengers to a residence. The victim got out of his vehicle, and said goodbye to the passengers having left the motor running and headlights on. When the victim returned, the three men had parked directly behind him, blocking his exit. The trio summoned the victim, they spoke, and the victim returned to his vehicle. Before he could get in, however, one of the defendants, Brown, alighted from the trio's vehicle, cut him off, pointed a gun at him and demanded his wallet. The victim complied and was then asked for his jewelry. As he removed his jewelry, another defendant, Dixon, began hitting him. Brown pointed his gun at the victim and ordered him to run down the street. The victim refused and was hit again. One of the victim's passengers apparently heard the commotion and yelled "What's going on?" At that point, the victim ran inside the residence and escaped. One of the defendants drove the victim's vehicle away, following the trio's vehicle. 200 F.3d at 703-05.

We conclude that, under the authorities discussed, the jury in the instant case could have concluded that Hicks was sufficiently within reach or observation of the vehicle that he could have retained his possession of it if not overcome by violence or prevented by fear. This is especially so where the facts show that Hicks was in the car when Holman threatened to kill him.

Because Holman's challenges to the sufficiency of the evidence fail, we **AFFIRM** his carjacking conviction.