UNITED STATES of America,
Plaintiff–Appellee,

v.

Donald CRISP, aka Donnell; Michael
Cox; Ruth Smith; Carlos Smith,
Defendants–Appellants.

Nos. 02–5510, 02–5609, 02–
6023 and 02–6024.

United States Court of Appeals,
Sixth Circuit.

Sept. 7, 2004.

Rehearing En Banc Denied Nov. 2, 2004.

Victor L. Ivy, Asst. U.S. Attorney, James W. Powell, Asst. U.S. Attorney, U.S. Attorney's Office, Jackson, TN, for Plaintiff–Appellee.

A. Russell Larson, Law Office of A. Russell Larson, Danny R. Ellis, Daniel J. Taylor, Spragins, Barnett, Cobb & Butler, Jackson, TN, Steven E. Farese, Sr., David L. Robinson, Farese, Farese & Farese, Ashland, MS, for Defendant–Appellant.

Before: BOGGS, Chief Judge; BATCHELDER and SUTTON, Circuit Judges.

BATCHELDER, Circuit Judge.

Ruth Smith and Carlos Smith appeal their convictions following a jury trial and Donald Crisp and Michael Cox appeal the sentences imposed following their entries of guilty pleas on charges of distribution and conspiracy to distribute crack cocaine. We AFFIRM.

## I.

Beginning sometime prior to June 2000, the Tennessee Bureau of Investigation

(TBI) and the Drug Enforcement Administration (DEA) conducted a joint investigation of an organization known as the "Crisp Farm" in the Bolivar, Tennessee, area. Leroy Crisp, Ruth Smith, Carlos Smith, and Donald Crisp maintained residences on the Crisp Farm, and other individuals often stayed there. There was also a nightclub on the property called Club 2000, which was operated by Leroy Crisp. Law enforcement officials had information indicating that Leroy Crisp, Ruth Smith's son, was the lead individual in an organization selling crack cocaine at the Crisp Farm.

The DEA and TBI employed an informant, Yvonna Roberts, to help them infiltrate the Crisp Farm operation. Roberts was a girlfriend of Leroy Crisp, and from June 2000 until July 2001 was present at the Crisp Farm almost continually, often purchasing and using crack cocaine there. Roberts testified at trial that she typically dealt with Leroy Crisp, Carlos Smith, or Donald Crisp, but also obtained drugs from various "runners," including other defendants in this case. Roberts's relationship with Leroy Crisp ended in early 2001, around the same time TBI Agent Aaron Chism began working in an undercover capacity by accompanying Roberts when she purchased crack cocaine from various individuals at the Crisp Farm. Roberts wore a wire and made audiotapes of these transactions.

Agent Chism and Roberts purchased approximately 9.5 grams of crack cocaine from defendant Donald Crisp in two transactions occurring February 20, 2001, and February 22, 2001. Cox also participated in the February 22 transaction, operating a vehicle with Donald Crisp as his passenger, waiving down Chism to initiate the transaction, and "shaking down" Chism by questioning him and noting his license plate number.

On April 5, 2001, Agent Chism and Roberts went to the Crisp Farm for the purpose of purchasing three ounces of crack cocaine. Chism observed as Roberts gave Leroy Crisp $2,700 in exchange for a package that contained approximately three ounces of crack. Ruth Smith was standing within eight feet of the drug transaction as it occurred. Agent Chism and Roberts later testified that as they drove away, they saw Crisp give the money directly to Ruth Smith. On April 12, 2001, Chism and Roberts returned to the Crisp Farm to purchase four ounces of crack for $4,000. On their arrival at the farm, they found Leroy Crisp, Ruth Smith, and Carlos Smith in Ruth Smith's yard. Ruth Smith was less than four feet away when Roberts purchased the drugs from Leroy Crisp, "but she turned her back" and did not directly witness the transaction. Agent Chism testified that immediately following the transaction he saw Leroy Crisp hand the proceeds directly to Ruth Smith.

Agent Chism and Roberts returned to the Crisp Farm on May 3, 2001, to purchase six ounces of crack for approximately $6,000. Leroy Crisp instructed them to pull into the Club 2000 parking lot, where Roberts purchased the crack from Carlos Smith. On May 10, 2001, Chism and Roberts conducted the last buy of the undercover operation, a transaction with Leroy Crisp, Carlos Smith, and Karl McKinnie for 84.3 grams of powder cocaine in exchange for $3,000. According to Roberts, on another occasion, when she and Leroy Crisp were about to leave town "to conduct business," she personally witnessed Ruth Smith hand Leroy Crisp $30,000 in cash, which he later used to purchase drugs.

On July 16, 2001, appellants Donald Crisp, Michael Cox, Carlos Smith, and Ruth Smith were charged along with Leroy Crisp, Sam McGuire, Charlene Hud-

son, and Karl McKinnie in an 18–count indictment alleging distribution of crack cocaine and conspiracy to distribute crack cocaine in violation of 21 U.S.C. §§ 841 and 846. They were arrested on July 18 and 19, and approximately 70 government agents executed a search warrant on the Crisp Farm.

Appellants Donald Crisp and Cox, as well as co-defendants Leroy Crisp, McGuire, Hudson, and McKinnie, entered guilty pleas. Donald Crisp pleaded guilty to and admitted all of the facts contained in Count 1 of the indictment, which charged him and the other defendants with conspiracy to possess and distribute more than 50 grams of cocaine base in violation of 21 U.S.C. § 841(a)(1). The parties agreed as part of the plea agreement that Donald Crisp's relevant conduct would be limited to the transactions charged in Counts 6 and 7, that is, the February 2001 sales of 9.5 grams of cocaine base. Cox pleaded guilty to Count 7, which charged him with the knowing distribution of cocaine base in violation of § 841(a)(1). At sentencing, both Donald Crisp and Cox sought role adjustments under U.S.S.G. § 3B1.2, with each contending that he played a "minimal role" or "minor role" in the offense for which he had pleaded guilty. Crisp also sought a downward departure under U.S.S.G. § 5H1.3, citing alleged physical and mental impairments. The court denied all of these requests. Crisp was sentenced to 120 months' imprisonment, the mandatory minimum sentence for a violation of 21 U.S.C. § 841(a) involving 50 grams or more of cocaine base. See 21 U.S.C § 841(b)(1)(A). Cox was sentenced to 37 months' imprisonment.

Carlos Smith and Ruth Smith proceeded to trial. Prior to trial, Carlos Smith filed a motion to suppress statements that he made while in custody. Smith contended that he not only did not waive his *Miranda* rights, see *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), but in fact requested an attorney and gave no statement. During his testimony at the suppression hearing, Smith alleged that TBI Agents Roger Hughes and Gary Azbill had made up the entire statement, even the intricate details. The district court credited the testimony of the officers over that of Carlos Smith and denied the motion to suppress. The statement was admitted and read into the record by Agent Azbill.

During trial, Ruth Smith twice moved for a judgment of acquittal. The district court denied these motions, finding that although Smith's attorney "certainly [had] plenty to argue to the jury," the evidence taken in the light most favorable to the government was sufficient for a jury to conclude that Smith was guilty. Ruth Smith also objected to a jury instruction that allowed the jury to meet the scienter element of the charged crimes if the jury found beyond a reasonable doubt that she "acted with a conscious purpose to avoid learning the truth" about others' using her property for an illegal purpose. The district court overruled Smith's objection. The jury returned guilty verdicts against Ruth Smith and Carlos Smith, and they were subsequently sentenced to 151 months' imprisonment and 169 months' imprisonment, respectively.

There are a number of issues before us on appeal. Donald Crisp and Michael Cox do not challenge their convictions, but claim that the district court erred in finding that they were not minor or minimal participants in the offenses to which they pleaded guilty, and Crisp argues that the district court erred in concluding that his medical and intellectual difficulties were not a basis for a downward departure under the Sentencing Guidelines. Carlos

Smith and Ruth Smith challenge their convictions. Carlos Smith claims that the district court erred in denying his motion to suppress his statement to law enforcement authorities. Ruth Smith contends that (1) the evidence presented at trial is insufficient to sustain a conviction for conspiracy or aiding and abetting the distribution of crack cocaine, and (2) the district court erred in giving the "deliberate ignorance" instruction to the jury.

## II.

■ Donald Crisp first argues that the district court erred in failing to grant him a role adjustment pursuant to the "mitigating role" provisions of U.S.S.G. § 3B1.2. Crisp specifically alleges that the court should have found that he was a "minimal" or "minor" participant in the offense for which he was convicted. We review the district court's determinations of role adjustment only for clear error. *United States v. Campbell,* 279 F.3d 392, 396 (6th Cir.2002). The defendant bears the burden of proving a mitigating role by a preponderance of the evidence. *United States v. Owusu,* 199 F.3d 329, 337 (6th Cir.2000).

> Crisp's plea agreement clearly states:
> The Defendant will plead guilty to Count 1 of the indictment, and by doing so, admits all facts and elements alleged in Count 1. The parties agree the defendant's relevant conduct is limited to the controlled substances distributed on February 20, 2001, and February 22, 2001, as alleged in Counts 6 & 7 of the indictment. (i.e., 9.5 grams of cocaine base).

By pleading guilty to Count 1 of the indictment, Crisp admitted that he had conspired both to possess with intent to distribute 50 grams or more of a substance containing crack, and to distribute 50 grams or more of a substance containing crack. Because Crisp pleaded guilty to the 50–gram quantity, the district court was required to—and did—sentence him to the 10–year statutory minimum set out in 21 U.S.C. § 841(b)(1)(A) without regard to Crisp's role in that conspiracy. Crisp's attorney conceded this point at sentencing, and acknowledged that his effort to portray Crisp as a minor or minimal participant was intended to provide the court with reasons to depart downward.

Crisp next argues that the district court erred in finding that his medical and intellectual difficulties were not a basis for a downward departure under two guidelines policy statements, namely, U.S.S.G. §§ 5H1.3 and 5H1.4, and that the court erred by not imposing a sentence outside the range established by the applicable Guidelines. We review a district court's denial of a downward departure only "where the district court incorrectly believed that it lacked discretion to depart downward." *United States v. McGahee,* 257 F.3d 520, 531 (6th Cir.2001); *United States v. Coleman,* 188 F.3d 354, 357 (6th Cir.1999) (en banc) ("An appellate court may only review a denial of a motion for a downward departure if the district court judge incorrectly believed that she lacked any authority to consider defendant's mitigating circumstances as well as the discretion to deviate from the guidelines."). Here, however, it is clear that the district court simply had no discretion to exercise. We addressed a claim similar to Crisp's a number of years ago, and we held that:

> While the district court's attempt to fashion an equitable sentence for a disabled man is understandable, it was without authority to do so either under section 841(b)(1)(B)(v), or under the sentencing guidelines. There are two reasons why the district court's approach fails. First, [Defendant]is subject to a statutorily mandated minimum term of

ten years imprisonment for his offenses. A statutorily mandated minimum sentence cannot be reduced by a guidelines policy statement. *See Stinson v. United States,* 508 U.S. 36, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993).

*United States v. Goff,* 6 F.3d 363, 366 (6th Cir.1993). *See also United States v. Smith,* 966 F.2d 1045, 1050 (6th Cir.1992) (holding that despite the defendant's compelling circumstances of poor health, the district court erred in imposing a sentence below the required statutory minimum for the offense). Like Goff, Crisp is subject to the 10–year mandatory minimum sentence, which cannot be reduced by guidelines policy statements. The district court sentenced Crisp to exactly that mandatory minimum sentence, and had no discretion to do otherwise. This claim of error is patently without merit.

### III.

■ Like Crisp, Michael Cox argues that the district court erred in failing to grant a role adjustment under U.S.S.G. § 3B1.2. As noted above, we review the district court's determinations of role adjustment only for clear error, *Campbell,* 279 F.3d at 396, and the defendant must prove a mitigating role by a preponderance of the evidence. *Owusu,* 199 F.3d at 337.

Cox did not plead guilty to the conspiracy, but pleaded guilty only to the substantive count in which he was charged with participating in the February 22, 2001 sale of 9.3 grams of crack cocaine. Like Crisp, Cox is subject to a mandatory minimum sentence, although that minimum is only 60 months. *See* 21 U.S.C. § 841(b)(1)(B)(iii). Cox, however, qualified for the "safety valve" provision of 18 U.S.C. § 3553(f), which permits the district court to sentence below the statutory minimum. He argues on appeal, as he did at

the sentencing hearing, that his involvement was merely that of "a 'courier' type role" in that 9.3–gram transaction; that his role must be assessed in the context of that transaction alone; and that the district court denied his request for a role adjustment because the court focused on the overall conspiracy.

Cox either misunderstands or misrepresents what the district court said and did at the sentencing hearing. The district court could not have been more clear on this issue: "Since the defendant was only charged with 9.3 grams of crack cocaine, then we don't consider his relevant conduct in comparison to everyone else in the conspiracy. *We look at his role in the offense that day.*" There is nothing in the record that shows Cox was held accountable for any conduct other than the February 22, 2001, transaction.

An adjustment under U.S.S.G. § 3B1.2 is not warranted unless the defendant is "substantially less culpable than [the] average participant." U.S.S.G. § 3B1.2, cmt. 3(A). Cox did not demonstrate that he was substantially less culpable than *any* other participants in the February 22, 2001, transaction; indeed the facts that Cox admitted under oath at his plea hearing establish that his role was critical to that transaction. Cox admitted that he drove Donald Crisp, who sold crack cocaine to the informant Roberts, to the site of the drug sale. Cox waved down Agent Chism, who was driving with Roberts. When Roberts got out of the vehicle, Cox told her that he and Crisp had obtained the crack, and that Roberts and Chism should come back to the farm. Upon Chism's and Roberts's return to the farm, Donald Crisp gave Roberts 9.3 grams of crack cocaine. During this transaction, Cox left the vehicle he was operating and approached Agent Chism to inquire about his identity. Cox then performed a

"shake-down" on Chism, questioning him and noting his license plate number. This assignment of error is without merit.

## IV.

█ Defendant Carlos Smith appeals the district court's denial of his motion to suppress statements made by Smith to law enforcement officials on July 19, 2001, in the interrogation room at the United States Marshal's Office in Jackson, Tennessee. Smith claims (1) that he was never read, nor did he ever waive, his *Miranda* rights; (2) that he requested legal counsel; and (3) that he did not make any of the incriminating statements attributed to him by Agent Azbill and Agent Hughes. Smith's only argument before this court is that the district court erred in finding that Smith had in fact waived his rights and made the statements attributed to him by the officers.

In reviewing a district court's suppression determinations, we review findings of fact for clear error, and legal conclusions de novo. *United States v. Lawrence,* 308 F.3d 623, 626–27 (6th Cir.2002). Where a defendant claims that a statement was obtained in violation of *Miranda,* the government need prove waiver only by a preponderance of the evidence. *Colorado v. Connelly,* 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *see also Nix v. Williams,* 467 U.S. 431, 444 n. 5, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984) (quoting *United States v. Matlock,* 415 U.S. 164, 178 n. 14, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974) ("[T]he controlling burden of proof at suppression hearings should impose *no greater burden* than proof by a preponderance of the evidence.") (emphasis added)). Agents Hughes and Azbill each testified that Hughes read Smith his rights, directly from the standard TBI waiver-of-rights form, before questioning him. They each stated that Smith could not sign the waiv-

er-of-rights form because there was a glass and wire partition between Smith and the officers, but that Smith orally agreed to waive his rights. Both agents testified that Smith gave the statement voluntarily and never requested an attorney. Smith testified at the suppression hearing that he did not receive any *Miranda* warnings and did not give any statement. He claimed instead that the officers "must have made all that up."

When a confession challenged as involuntary is sought to be used against a criminal defendant at his trial, he is entitled to a reliable and clear-cut determination that the confession was in fact voluntarily rendered. *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). "Thus, the prosecution must prove at least by a preponderance of the evidence that the confession was voluntary." *Id.* It did so in this case. The district court did not commit clear error in crediting the testimony of Agents Hughes and Azbill over that of defendant Carlos Smith. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Thurman v. Yellow Freight Systems, Inc.,* 90 F.3d 1160, 1166 (6th Cir.1996) (citing *Anderson v. City of Bessemer City,* 470 U.S. 564, 574–75, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). Because the testimony demonstrated that the statements were made and were made voluntarily, the district court did not err in refusing to suppress the statements.

## V.

█ Defendant Ruth Smith's first claim on appeal is that the evidence presented at trial was insufficient to sustain a conviction against her for conspiracy under 21 U.S.C. § 846, and for aiding and abetting possession with the intent to distribute crack cocaine under 21 U.S.C. § 841(a)(1). We

review a claim of insufficient evidence under the same standard applied by the district court: "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Avery,* 128 F.3d 966, 971 (6th Cir.1997). "A defendant claiming insufficiency of the evidence bears a very heavy burden." *United States v. Warwick,* 167 F.3d 965, 971 (6th Cir.1999) (quotation omitted). We must draw all reasonable inferences and resolve all issues of credibility in favor of the jury's verdict, and it is not necessary for the court to exclude every reasonable hypothesis but guilt. *Avery,* 128 F.3d at 971. Circumstantial evidence alone, if substantial and competent, may sustain a conviction under this deferential standard of review. *United States v. Adams,* 265 F.3d 420, 423 (6th Cir.2001).

At trial, defendant Ruth Smith twice moved for a judgment of acquittal, stating that no reasonable juror could find her guilty of the charged crimes. The district court denied each motion and specifically pointed to testimony that Smith was present at drug transactions and took the proceeds from those transactions. Ruth Smith once again claims on appeal that "the 'evidence' against [her] was neither substantial or credible," and that an objective observer "should be outraged by the record in the case." We disagree.

In order to establish a drug conspiracy under 21 U.S.C. § 846, the government must prove that there was an agreement to violate drug laws, knowledge and intent to join the conspiracy, and participation in the conspiracy. *See United States v. Gibbs,* 182 F.3d 408, 420 (6th Cir.1999). The defendant "need not be an active participant in every phase of the conspiracy,

so long as [s]he is a party to the general conspiratorial agreement." *Id.* at 421 (quotation omitted). "[T]he importance of the connection need not be great," *United States v. Betancourt,* 838 F.2d 168, 174 (6th Cir.1988), and proof of a formal agreement is not required. "[I]t must only be proven that the members of the conspiracy had at least a tacit or material understanding to try to accomplish an unlawful goal." *United States v. French,* 974 F.2d 687, 696 (6th Cir.1992); *see United States v. Pearce,* 912 F.2d 159, 161 (6th Cir.1990).

The combined testimony of informant Roberts, Agent Chism, and defendants Karl McKinnie and Sam McGuire is sufficient to support Ruth Smith's conviction. Roberts testified that when she conducted the major drug buys along with Agent Chism, Ruth Smith was always within ten feet of her. On April 12, 2001, Ruth Smith was less than four feet away when Roberts purchased the drugs from Leroy Crisp, but conveniently "turned her back" just as the drugs changed hands, and therefore did not see the transaction. Agent Chism testified that he then saw Leroy Crisp hand the proceeds, some $4,000 in cash, directly to Ruth Smith.

Ruth Smith was also present at the earlier controlled drug buy on April 5, 2001. Agent Chism observed as Roberts gave Leroy Crisp $2,700 for a package containing roughly three ounces of crack. Ruth Smith was standing within eight feet of the drug transaction as it occurred. Chism and Roberts each testified that as they drove away, they saw Crisp give the money directly to Ruth Smith. Roberts testified that as she drove off with Agent Chism, she saw Ruth Smith counting the money.

The record contains relevant evidence in addition to the controlled buys in April 2001. Several witnesses testified that they personally witnessed Ruth Smith and Le-

roy Crisp passing large sums of money. Roberts testified that on one occasion, she saw Ruth Smith hand her son Leroy Crisp $30,000 in cash as Crisp and Roberts were leaving "to conduct business." Crisp used that money to purchase a package of cocaine, which he and Roberts "cooked" in order to make crack. Co-defendant Sam McGuire also testified that he had seen Leroy Crisp give Ruth Smith "large sums of money," and that Crisp did not have a job and did not work. It is worth noting at this point that the record does not contain any evidence that "Club 2000," which was operated by Leroy Crisp, was the source of any income whatever to Crisp.

Co-defendant Karl McKinnie testified that he had seen Ruth Smith receive large amounts of both money and drugs. McKinnie's description of Ruth Smith's actions is very similar to the descriptions provided by Roberts and Agent Chism of her actions during the controlled drug buys. According to McKinnie, "[Ruth Smith] may have been standing right there close to when the transaction was going on. She would turn her back like, you know, that she ain't seeing it. And as soon as he [Leroy Crisp] get the money, he would pass it to her and she would take it and go in the house with it." McKinnie also testified that on one occasion, he saw Leroy Crisp purchase a bag of crack, and that Ruth Smith took the bag from him and took it into her house.

Smith argues that these witnesses were unreliable. However, "[a] reviewing court does not reweigh the evidence or determine the credibility of the witnesses." *United States v. Spears*, 49 F.3d 1136, 1140 (6th Cir.1995); *see also United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993) ("[W]e do not weigh the evidence, consider the credibility of witnesses or substitute our judgment for that of the jury."). A sufficiency of evidence inquiry "does not

require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt' ... [but] whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318–19 (internal citation omitted).

There was sufficient evidence for a rational trier of fact to conclude that Ruth Smith participated in the conspiracy by receiving the money from crack cocaine sales and providing money to purchase cocaine. The evidence was also sufficient to prove that Ruth Smith aided and abetted the April 5, 2001, and April 12, 2001, distributions of crack cocaine to Roberts and Agent Chism.

It is not necessary for the government to prove that Smith actually or even constructively possessed the drugs in order to obtain a conviction for aiding and abetting. *See United States v. Ledezma*, 26 F.3d 636, 641 (6th Cir.1994). The government's burden was to prove that Ruth Smith knew that Leroy Crisp possessed the crack with intent to distribute and that she offered her assistance and encouragement in the commission of those sales. *Id.* The testimony presented to the jury, which the jury chose to credit, is sufficient to establish that she did.

## VI.

Ruth Smith's final argument is that the district court erred in instructing the jury that it could find that Ruth Smith knew that her property was being used by others for an illegal purpose if it found beyond a reasonable doubt that Ruth Smith "acted with a conscious purpose to avoid learning the truth" about others' using her property for an illegal purpose. We review a district court's choice of jury

instructions for abuse of discretion. *United States v. Beaty*, 245 F.3d 617, 621 (6th Cir.2001). A trial court has broad discretion in drafting jury instructions and does not abuse its discretion unless the jury charge "fails accurately to reflect the law." *United States v. Layne*, 192 F.3d 556, 574 (6th Cir.1999). We will reverse a judgment based upon an improper jury instruction "only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *United States v. Harrod*, 168 F.3d 887, 892 (6th Cir.1999) (quoting *Beard v. Norwegian Caribbean Lines*, 900 F.2d 71, 72–73 (6th Cir.1990)).

Ruth Smith contends that two of the instructions given to the jury are at odds. The first—the "deliberate ignorance" instruction—reads in pertinent part as follows:

> In determining whether a defendant acted knowingly, you may consider whether the defendant closed his or her eyes to what otherwise would have been obvious to him or her. If you find beyond a reasonable doubt that a defendant acted with a conscious purpose to avoid learning the truth, then this element may be satisfied. However, guilty knowledge may not be established by demonstrating that the defendant was merely negligent or foolish or mistaken or was merely at the scene of a crime.
>
> If you find that a defendant was aware of a high probability that someone was using his or her property for an illegal purpose, and that defendant *acted with a deliberate disregard of those facts, then you may find that the defendant acted knowingly.* However, if you find that the defendant actually believed that no illegal activity was occurring on the property, the defendant may not be convicted. (emphasis added)

Ruth Smith claims that the "deliberate ignorance" instruction, as given, "eviscer-ated" the "mere presence instruction" that was also given. That instruction stated:

> [M]erely being present at the scene of a crime or *merely knowing that a crime is being committed or is about to be committed is not sufficient conduct to find that a defendant committed that crime.* In order to find the defendant guilty of the crime, the government must prove beyond a reasonable doubt that in addition to being present or knowing about the crime charged in the indictment, the defendant knowingly and deliberately associated himself or herself with that crime charged in some way as a participant, someone who wanted the crime to be committed, and not as a mere spectator. (emphasis added)

Smith argues that the deliberate ignorance instruction cancels out the mere presence instruction. We disagree. The first instruction provides for a finding of one element of the overall crime, namely, that defendant acted knowingly. The second provides that mere "knowing" is insufficient to prove the crime charged, that the other elements must be proven as well. These do not conflict, and it is not an abuse of discretion for the district court to attribute to these words their plain and logical meaning, rather than the strained interpretation offered by Smith.

The deliberate ignorance instruction is an accurate statement of the law, and is substantially the same as the Sixth Circuit Pattern Jury Instruction 2.09. There was certainly sufficient evidence of deliberate ignorance to warrant such an instruction. It was given at the request of the government, based upon evidence that Ruth Smith was present when numerous drug transactions were conducted, but conveniently turned her back while the actual hand-to-hand exchanges occurred, only to be given the proceeds later by her son Leroy Crisp. Nor did the use of "knowing"

in each instruction confuse the jury as to its duty. The instruction given by the district court expressly cautioned against convicting Smith for mere negligence, mistake, or foolishness, which the court clearly instructed are not the same as knowledge. Because the district court did not abuse its discretion in giving the deliberate ignorance instruction to the jury, we need not examine the government's contention that any error, if found, would be harmless.

## CONCLUSION

For the reasons set forth above, we AFFIRM the judgment of the district court on each assignment of error raised by the defendants.