**NOT RECOMMENDED FOR PUBLICATION**
File Name: 17a0151n.06

**No. 16-5358**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| JOSHUA HAYWORTH, | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

**FILED**
Mar 08, 2017
DEBORAH S. HUNT, Clerk

BEFORE:     BOGGS, SILER, and MOORE, Circuit Judges.

BOGGS, Circuit Judge.  After robbing a Burger King, Joshua Hayworth went on the run from the police.  He wrecked his initial vehicle and abandoned a second car once law enforcement agents recognized him while he drove some days later.  When a manhunt began and police closed in, Hayworth frantically sought another method of escape.  He rushed at two women standing in a driveway (one nine months pregnant), shouting at them to give him keys, and jumped on top of the fallen pregnant victim to struggle with her and seize her keys.  After he was caught, he was charged with and found guilty of Hobbs Act robbery and carjacking.  He now appeals his carjacking conviction and sentence.  We affirm both.

I

Just after 11 p.m. on January 30, 2014, Joshua Hayworth approached a Burger King in Lenoir City, Tennessee, with his face covered and carrying an airsoft pistol.  In accordance with

a prearranged plan, Timothy Chudley—an acquaintance of Hayworth's—opened the back door, ostensibly to take out the trash and salt patches of ice by the back entrance, but in truth to let Hayworth into the restaurant. Hayworth rushed into the Burger King, brandishing the pistol and shouting at the staff to get on the ground, open the safe, and give him the money. Once he had stolen approximately $3,300 from the restaurant, he engaged in a brief struggle with Chudley— part of the plan to make Chudley appear to be an innocent employee. Hayworth fled with the money in his sister's Nissan Maxima, but wrecked it moments after he passed an officer responding to the robbery. After being ejected from the car, he ran from the crash and eluded pursuing officers and dogs. Officers recovered, among other items, a large amount of cash, the airsoft pistol, Hayworth's phone, and his parole identification card from the wrecked car.

Hayworth managed to get his hands on a Jeep Wrangler and met with a friend, Nikisha Popejoy, to discuss his predicament. A few days later, on February 3, the two drove together to a pawn shop to sell one of the Jeep's speakers. While he was driving back to Popejoy's home, an FBI agent in an unmarked car saw the Jeep and pulled up beside it at a red light, where he recognized Hayworth. After another agent also began following the Jeep, Hayworth realized he was being shadowed and sped off, weaving across lanes at a high rate of speed and at times travelling on the wrong side of the road to lose the agents. Once he had shaken his tails, Hayworth dropped Popejoy off near her home. He then abandoned the Jeep a short distance away. By this point, a full manhunt had begun, and the Knox County Sheriff's Department sent out a police helicopter to aid the search while police officers swarmed the scene.

Some time later, neighbors Melissa McGuire and Sarah Gulley were discussing the recent commotion in the neighborhood as well as Gulley's excitement for the imminent arrival of her first child, as she was nine months pregnant and due to be induced in four days. Suddenly,

Hayworth emerged from between two houses, running at the women with his hand in his pocket as if he were armed and shouting at them to give him their keys. Alarmed, McGuire told Gulley to flee, but as Gulley attempted to do so, she tripped and fell on her stomach onto the pavement. Hayworth demanded keys from McGuire but she was unable to produce them, and so he turned his attention to the fallen Gulley, who had her keys in her hand. Screaming for the keys, Hayworth wrestled with Gulley to take them from her, jabbing her in an attempt to gain control. McGuire pleaded with Hayworth to leave Gulley alone as she was pregnant. After a struggle, Hayworth managed to wrest away the keys from Gulley and found her car by using the alarm button. As he began to leave in Gulley's car, Gulley pleaded for Hayworth to release her dog, which was inside the car. Hayworth opened the door and let the dog out of the vehicle before driving away.[1]

As he fled the scene of this new crime, he passed the FBI agent who had spotted him earlier in the day. Just as he had following his Burger King robbery, Hayworth then immediately lost control of the vehicle and wrecked it. By the time officers reached the crash scene, Hayworth was gone. But following the hue and cry of bystanders, police tracked Hayworth to an abandoned house and found him hiding under a couch.

Hayworth was charged with Hobbs Act robbery, aiding and abetting the same, and carjacking under 18 U.S.C. §§ 2, 1951, and 2119. He pleaded not guilty and went to trial, where he was convicted on both counts by a jury. At sentencing, he received a 200-month term of imprisonment. Hayworth appeals on three bases: first, that the evidence presented was insufficient to convict him of carjacking; second, that the district court's denial of a motion for a judgment of acquittal was erroneous because the "passions, prejudices, or sympathies" of the

---

[1] Fortunately, Gulley's son was born healthy and unharmed.

jury were overwhelming, given the emotional testimony of the victims; and third, that the district court erred in the length of the sentence it imposed.

## II

### A. Sufficiency of the Evidence

We review de novo whether the evidence is sufficient to support a conviction in a criminal case. *United States v. Garcia*, 758 F.3d 714, 718 (6th Cir. 2014). A defendant who challenges the sufficiency of the evidence "bears a very heavy burden," as we consider all evidence in the light most favorable to the prosecution and decide whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999). We should reverse a conviction if we determine "that the government's case against the defendant was so lacking that the trial court should have entered a judgment of acquittal, rather than submitting the case to the jury." *Lockhart v. Nelson*, 488 U.S. 33, 39 (1988).

The federal statute criminalizing carjacking includes several elements. It states that "[w]hoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall" face a set of penalties, depending on whether death or serious bodily harm actually result. 18 U.S.C. § 2119. Hayworth challenges only one of these elements: whether he had "intent to cause death or serious bodily harm." Because § 2119 is a specific-intent crime, "the United States must show more than that the defendant committed the criminal acts; it must also show evidence of the specific mental culpability at issue," here that Hayworth actually intended to cause death or serious bodily injury. *United States v. Adams*, 265 F.3d 420, 424 (6th Cir. 2001).

The Supreme Court has held that the intent required for this crime also encompasses conditional intent. *See Holloway v. United States*, 526 U.S. 1, 8 (1999). That is to say, a carjacker's intent need not be to kill or seriously injure; rather, it can also be simply the intent to kill or seriously injure if the victim resists. *Id.* at 11–12 ("[T]he Government [must] prove beyond a reasonable doubt that the defendant would have at least attempted to seriously harm or kill the driver if that action had been necessary to complete the taking of the car." *Id.* at 12.). In order to find conditional intent, we must examine the "totality of the circumstances to evaluate whether the defendant's words and actions sufficiently demonstrated" such an intent. *United States v. Fekete*, 535 F.3d 471, 481 (6th Cir. 2008).

Hayworth argues that he had no weapon and even let the dog out of the car once he stole it, demonstrating that he merely wanted the keys and not to cause any harm. But a weapon is not a prerequisite to a carjacking conviction; rather "[t]he requisite *mens rea* can be shown by evidence of an intent to use . . . brute force, or any other means that indicates an ability and willingness to cause serious bodily harm or death if not obeyed." *Id.* at 480. In *United States v. Edmond*, 815 F.3d 1032 (6th Cir. 2016), we observed that there was sufficient evidence of intent to cause death or serious bodily harm where there was a physical fight with a valet over keys. *Id.* at 1040. Hayworth argues that this observation is mere dicta, as we concluded that the defendant in that case would have been convicted on an alternate ground (i.e., reaching for a firearm was sufficient to demonstrate specific intent). But in that case, we stated that the conviction would stand *even if* he had not reached for a gun, a point that was in contention given that the jury had acquitted the defendant of firearm possession during commission of the crime. *Ibid.* Because the *Edmond* panel determined that the physical struggle without the gun was also sufficient to demonstrate the requisite intent, it did not resolve the factual dispute. Thus, that determination

was material to the decision, rather than *obiter dicta*. Regardless, our case appears to have even greater evidence of such conditional intent than did *Edmond*. Testimony at trial showed that Hayworth struck and struggled with a nine-months pregnant woman, who had already fallen to the ground, until she relinquished her keys. Considering the totality of the circumstances, including testimony that demonstrated that Hayworth was aware that Gulley was pregnant when he jabbed and fought her, the evidence was sufficient to find that Hayworth intended to cause at least serious bodily harm if Gulley did not relinquish the keys.

## B. Impartial-Jury Allegation

Hayworth's next argument is that the case should not have gone to the jury because the prosecution had Gulley testify last "to ensure maximum emotional impact upon the jury—a skillful move . . . done to ensure that the passions, prejudices, and sympathies of the jury were inflamed." Appellant's Br. 21. As a result of the government's "prey[ing] upon the[se] passions," Hayworth alleges that the trial court should have known that "the jury would likely base its verdict on [them] . . . , [and] not the actual facts of the case." *Id.* at 24.

A defendant must be "fairly tried in a public tribunal free of prejudice, passion, excitement, and tyrannical power." *Chambers v. Florida*, 309 U.S. 227, 236–37 (1940). But Hayworth's objection was not at voir dire to the partiality of individual jurors. Rather, the objection was that the jury as a whole would rule on emotion. In this case, before permitting the jurors to deliberate, the district court provided instructions "not [to] let any bias, sympathy or prejudice you may feel toward one side or the other influence your decision in any way." Though the testimony was certainly gripping and emotional, there was no demonstration that it was presented in a way that overcame the jury's presumed impartiality. *See Skilling v. United States*, 561 U.S. 358, 399 n.34 (2010) ("[I]t is a premise of [our justice] system that jurors will

set aside their preconceptions when they enter the courtroom and decide cases based on the evidence presented."). Absent demonstrable statements by the prosecutor attempting to call on a jury's emotions or fears, *see, e.g.*, *Johnson v. Bell*, 525 F.3d 466, 484 (6th Cir. 2008), or encouraging jury identification with crime victims, *see, e.g.*, *Hodge v. Hurley*, 426 F.3d 368, 384 (6th Cir. 2005), Hayworth cannot show that the testimony clearly prejudiced his case or rendered it fundamentally unfair. *See United States v. Poandl*, 612 F. App'x 356, 365 (6th Cir. 2015). And this result makes sense: where a defendant commits a heinous act, he cannot but expect that the horrible details will be presented where they are central to the prosecution and elements of the crime. As long as proper precautions are taken to ensure that the jury is aware of its obligation to remain impartial and no improper attempts are made to tempt it away from that responsibility, the jury is presumed to have done its duty.

## C. Hayworth's Sentence

Finally, Hayworth challenges only the substantive reasonableness of his sentence. Here, both parties agree that the district court correctly calculated the Sentencing Guidelines range at 110 to 137 months, given Hayworth's offense level of 28 and criminal history category of IV. The dispute lies in the district court's grant of the prosecution's motion for an upward variance in sentencing Hayworth to 200 months in prison. "The essence of a substantive-reasonableness claim is whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632–33 (6th Cir. 2010). "A sentence is substantively unreasonable if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *Id.* at 633

(quoting *United States v. Walls*, 546 F.3d 728, 736 (6th Cir. 2008)). Our standard of review in such cases is for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 46 (2007).

The district court carefully went through the 18 U.S.C. § 3553(a) factors as applied to Hayworth's case. After discussing the various factors, the court granted the government's motion for an upward variance, emphasizing the nature and scope of Hayworth's criminal history and the violent nature of his conduct in the case at hand. In particular, the district court emphasized the "strong need to protect the public from further crimes of the defendant" and found that a variance was appropriate "to promote respect for the law, provide just punishment and to afford adequate deterrence."

It is true that the sentence in this case was a nearly fifty-percent increase from the high end of the Sentencing Guidelines range. Nevertheless, "[a]lthough we may consider the extent of the deviation in reviewing a district court's sentence, we 'must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance.'" *United States v. Lanning*, 633 F.3d 469, 476 (6th Cir. 2011) (quoting *Gall*, 552 U.S. at 51). The demonstration of violence in this case by Hayworth was striking: his robbery of the Burger King caused one employee to require mental-health treatment and his carjacking involved a fight with a nine-months pregnant woman. Furthermore, Hayworth had a history of significant criminal conduct and was on parole for a prior aggravated robbery at the time of the Burger King robbery. The district court made special note of the "nature, scope and in certain aspects the violent nature of [Hayworth's] previous criminal history"[2] and that "the defendant has been involved in the criminal justice system beginning as a juvenile continuing through his entire

---

[2] In discussing the variance, the court referred to Hayworth's violent nature on four separate occasions. ("[T]he Court is cognizant of . . . in certain aspects the violent nature of [Hayworth's] previous criminal history"; "[Hayworth's criminal history] demonstrat[es] the violent nature of this defendant"; "[a]gain, the Court notes the violent nature of his conduct in this case"; "the nature of the instant offense was extremely violent.")

life." Accordingly, "[g]iven [Hayworth]'s prior convictions and his parole status, it was reasonable for the district court to place substantial weight on [Hayworth]'s criminal history in reaching its sentencing determination." *United States v. Webb*, 403 F.3d 373, 384 (6th Cir. 2005). The district court did not abuse its discretion in varying upward because it "selected a punishment that it believed fit [Hayworth]'s crimes, and provided sufficient reasons to justify it." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008). The district court provided thorough justification, citing in detail the violent history and unrepentant nature of Hayworth as well as his "callous disregard for persons in particular as well as property." Accordingly, his sentence was substantively reasonable and within the district court's discretion.

III

For the foregoing reasons, we **AFFIRM** Hayworth's conviction and sentence.